UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

THE FUND FOR LOUISIANA'S FUTURE                    CIVIL ACTION

v.                                                 NO. 14-0368

LOUISIANA BOARD OF ETHICS, ET AL.                  SECTION "F"

ORDER AND REASONS

Before the Court is the defendants' motion to dismiss or,
alternatively, transfer venue.  For the reasons that follow, the
motion is DENIED.

Background

This civil rights litigation arises out of a constitutional
challenge to a Louisiana campaign finance law that limits the
amount of money that may be contributed to, or accepted by,
political committees regardless of the committee's independence.

The Fund for Louisiana's Future is a political organization;
it is registered with the Federal Election Commission as a federal
independent expenditure-only committee, commonly referred to as a
"Super PAC", and with the Louisiana Supervisory Committee on
Campaign Finance Disclosure as a state "political committee."  FFLF
was established by Charles R. Spies to make independent
expenditures in support of conservative candidates in federal,
state, and local elections in Louisiana, in the form of television,
radio, print, internet, and telephone advertisements.  According to

1

Mr. Spies, FFLF does not and will not make contributions to, or coordinated expenditures on behalf of, candidates or political party committees; all decisions concerning expenditures of FFLF's funds are made independent of any candidate, campaign, party committee, or their agents.[1]  FFLF wants to solicit and accept contributions in amounts greater than $100,000 per person so that it can make independent expenditures to support Louisiana state and local candidates; it alleges that it would do so but for Louisiana's statutory prohibition on (and penalties for) soliciting and accepting such contributions that exceed $100,000 every four years.[2]

FFLF filed a complaint for declaratory and injunctive relief against the Louisiana Board of Ethics and its members:  it seeks (a) a declaration that the $100,000 contribution limit contained in La.R.S. 18:1505.2(K) is unconstitutional as applied to committees like FFLF that engage in independent expenditures only; and (b) preliminary and permanent injunctions enjoining the defendants from enforcing La.R.S. 18:1505.2(K) as applied to contributions to political committees making only independent expenditures; and (c) costs and attorneys' fees pursuant to 42 U.S.C. § 1988.

---

[1]Defendants dispute FFLF's independence.  At this stage of the proceedings, the Court takes the plaintiff's allegations as true.

[2]FFLF alleges that, in fact, at least one prospective donor, Donald T. Bollinger, wants to contribute at least $125,000, but he cannot do so in light of Louisiana's contribution cap.

Campaign finance in Louisiana is governed by the Louisiana Campaign Finance and Disclosure Act, La.R.S. 18:1481, et seq. La.R.S. 18:1483(a)(i) defines "political committee" as

> two or more persons, other than a husband and wife, and any corporation organized for the primary purpose of supporting or opposing one or more candidates, propositions, recalls of a public officer, or political parties, which accepts contributions in the name of the committee, or makes expenditures from committee funds or in the name of the committee, or makes a transfer of funds to or receives a transfer of funds from another committee, or receives or makes loans in an aggregate amount in excess of five hundred dollars within any calendar year....

A "contribution" means

> a gift, conveyance, payment or deposit of money or anything of value, or the forgiveness of a loan or of a debt, made for the purpose of supporting, opposing, or otherwise influencing the nomination or election of a person to public office, for the purpose of supporting or opposing a proposition or question submitted to the voters, or for the purpose of supporting or opposing the recall of a public officer, whether made before or after the election.

La.R.S. 18:1483(6)(a). Under La.R.S. 18:1483(6)(b)(i), "expenditures made by any person in cooperation, consultation or concert, with, or at the request or suggestion of, a candidate, his authorized political committees, or their agents...shall be considered to be a contribution to such candidate." (The Act does not define "independent expenditure" and fails to include an exception for political committees that make only independent expenditures.)

La.R.S. 18:1505.2(K), entitled "Contributions; expenditures;

certain prohibitions and limitations", the target of plaintiff's constitutional challenge, provides:

> K. (1) During any four year calendar period commencing January 1, 1991 and every fourth year thereafter, no person shall contribute more than one hundred thousand dollars to any political committee or any subsidiary committee of such political committee, other than the principal or any subsidiary committee of a candidate. Such limitation on a contribution shall not apply to any contribution from a national political committee to an affiliated regional or state political committee.
> (2) During the time period provided for in Paragraph (1) of this Subsection, no political committee or subsidiary of such political committee, other than the principal any subsidiary committee of a candidate, shall accept more than one hundred thousand dollars from any person.

A violation of the contribution limits carries with it penalties up to $1,000 per violation.  La.R.S. 18:1505.5(B)(5).

The Louisiana Board of Ethics for Elected Officials acts as the Supervisory Committee on Campaign Finance Disclosure; it is the state agency responsible for administrative and enforcement of the Louisiana Campaign Finance and Disclosure Act. La.R.S. 18:1511.1 provides:

> A.   The Supervisory Committee on Campaign Finance Disclosure is established.  The Board of Ethics, as established in R.S. 42:1132, shall function as the supervisory committee to administer and enforce the provisions of this Chapter and the rules, regulations, and orders issued hereunder.  The members of the Board of Ethics shall constitute the supervisory committee.
> ...
> C.   The members of the supervisory committee shall be immune from any civil liability for any official action taken in the exercise of their functions pursuant to or in connection with the provisions of this Chapter, except any wrongful and malicious act or gross negligence.

To enable it to investigate alleged violations effectively and

4

enforce compliance with the Act's provisions, the Board has the authority to "hold hearings, to subpoena witnesses, administer oaths, compel the production of books, records, and papers, public and private, require the submission under oath of written reports or answers to questions." La.R.S. 18:1511.4(C)(1). The Board also has the authority to render advisory opinions. La.R.S. 18:1511.2(B). And, the Board has the authority to "forward all information concerning the alleged violation to the district attorney of the judicial district in which the alleged violation has occurred who shall review such information and make such investigation and initiate such prosecution as he shall deem necessary." La.R.S. 18:1511.6(A).

In light of La.R.S. 18:1505.2(K)'s contribution limit, FFLF sought an advisory opinion from the Board pursuant to La.R.S. 42:1134 to determine the extent to which it could raise contributions and make independent expenditures after Citizens United v. Federal Election Commission, 558 U.S. 310 (2010) and its progeny. In addressing FFLF's request at its January 17, 2014 public meeting, the Board stated its intention to continue to apply and enforce La.R.S. 18:1505.2(K). Thereafter, the Board "decline[d] to render an opinion regarding the constitutionality of provisions of the Campaign Finance Disclosure Act."

On February 18, 2014 FFLF filed a complaint for declaratory and injunctive relief against the Board and its members in their

5

official capacities, M. Blake Monrose, in his official capacity as Chair of the Board; Julie E. Blewer, in her official capacity as Vice Chair of the Board; Terry Backhaus, in his official capacity as Board member; Charles Emile Bruneau, Jr., in his official capacity as Board member; Jean Ingrassia, in her official capacity as Board member; William J. Larzelere, Jr., in his official capacity as Board member; Louis Leggio, in his official capacity as Board member; Steve Lemke, in his official capacity as Board member; Bob McAnelly, in his official capacity as Board member; Ashley Kennedy Shelton, in her official capacity as Board member; and Grove Stafford, in his official capacity as Board member.  FFLF seeks to enjoin the Board defendants' application and enforcement of La.R.S. 18:1505.2(K), which bans contributions for independent expenditures in excess of $100,000 every four years.  FFLF alleges that, as applied to it, the Code's contribution limit serves no legitimate governmental interest and is neither narrowly tailored nor closely drawn to further such an interest, and therefore violates FFLF's rights to freedom of speech and freedom of association under the First and Fourteenth Amendments to the U.S. Constitution.

The defendants now seek to dismiss the plaintiff's complaint for declaratory and injunctive relief pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6); defendants also request a stay and alternatively seek to transfer this matter to the Middle

District of Louisiana.

I.

*A.*

Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the Court's subject matter jurisdiction. Fed.R.Civ.P. 12(b)(1). The defendants, the Board and its members sued in their official capacities, challenge this Court's subject matter jurisdiction over them, invoking the doctrine of sovereign immunity. The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001). The Court may find a plausible set of facts to support subject matter jurisdiction by considering any of the following: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Barrera-Montenegro v. United States, 74 F.3d 657, 659 (5th Cir. 1996).

*B.*

The defendants also seek dismissal for failure to state a claim under Rule 12(b)(6). The standard of review applicable to motions to dismiss under Rule 12(b)(1) is similar to that applicable to motions to dismiss under Rule 12(b)(6). See Williams v. Wynne, 533 F.3d 360, 364-65 n.2 (5th Cir. 2008)(observing that the Rule 12(b)(1) and Rule 12(b)(6) standards are similar, but

7

noting that applying the Rule 12(b)(1) standard permits the Court to consider a broader range of materials in resolving the motion).

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted.  Such a motion is rarely granted because it is viewed with disfavor.  See Lowrey v. Tex. A & M Univ. Sys., 117 F.3d 242, 247 (5th Cir. 1997) (quoting Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1050 (5th Cir. 1982)).  In considering a Rule 12(b)(6) motion, the Court "accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  See Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit, 369 F.3d 464 (5th Cir. 2004) (quoting Jones v. Greninger, 188 F.3d 322, 324 (5th Cir. 1999)).  But, in deciding whether dismissal is warranted, the Court will not accept conclusory allegations in the complaint as true.  Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1050 (5th Cir. 1982). Indeed, the Court must first identify allegations that are conclusory and, thus, not entitled to the assumption of truth.  Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009).  A corollary: legal conclusions "must be supported by factual allegations." Id. at 1950.  Assuming the veracity of the well-pleaded factual allegations, the Court must then determine "whether they plausibly give rise to an entitlement to relief." Id.

8

"'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Gonzalez v. Kay, 577 F.3d 600, 603 (5th Cir. 2009)(quoting Iqbal, 129 S.Ct. at 1949 (2009))(internal quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quotation marks, citations, and footnote omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."). This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (citing Twombly, 550 U.S. at 557)(internal quotations omitted). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'", thus, "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

9

do." <u>Twombly</u>, 550 U.S. at 555 (citation omitted).

In deciding a motion to dismiss, the Court may consider documents that are essentially "part of the pleadings" -- that is, any documents attached to or incorporated in the plaintiffs' complaint that are central to the plaintiff's claim for relief. <u>Causey v. Sewell Cadillac-Chevrolet, Inc.</u>, 394 F.3d 285, 288 (5th Cir. 2004) (citing <u>Collins v. Morgan Stanley Dean Witter</u>, 224 F.3d 496, 498-99 (5th Cir. 2000)).  Also, the Court is permitted to consider matters of public record and other matters subject to judicial notice without converting a motion to dismiss into one for summary judgment.  <u>See</u> <u>United States ex rel. Willard v. Humana Health Plan of Texas Inc.</u>, 336 F.3d 375, 379 (5th Cir. 2003).

## II.

The defendants advance a familiar litany of grounds for dismissing the plaintiff's complaint. The Court first takes up the threshold issues of subject matter jurisdiction and justiciability.

### A.
### *Sovereign Immunity*

The defendants contend that the Court lacks subject matter jurisdiction based on Eleventh Amendment sovereign immunity.  The Court disagrees.

"Sovereign immunity is the privilege of the sovereign not to be sued without its consent." <u>Va. Office for Prot. & Advocacy v. Stewart</u>, --- U.S. ---, 131 S.Ct. 1632, 1637, 179 Led.2d 675 (2011). The Eleventh Amendment to the U.S. Constitution bars suits by

10

private citizens against a state in federal court.  K.P. v. LeBlanc, 627 F.3d 115, 124 (5th Cir. 2010)(citing Hutto v. Finney, 437 U.S. 678, 700 (1978)).  This immunity extends to protect state actors who are acting in their official capacities.  Id.  There is, of course, a narrow exception to this immunity from suit: the Ex parte Young exception, which "is based on the legal fiction that a sovereign state cannot act unconstitutionally[; t]hus, where a state actor enforces an unconstitutional law, he is stripped of his official clothing and becomes a private person subject to suit." See id. (emphasis added)(citing Ex parte Young, 209 U.S. 123 (1908)); see also Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 n.10 (1989)(noting "[o]f course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State'"). Ex parte Young limits the plaintiff to prospective relief, and bars money damages.  Verizon Md. Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635, 645 (2002).

The Ex parte Young exception applies and "state officers c[an] be sued in federal court despite the Eleventh Amendment ... [if] the officers have 'some connection with the enforcement of the act' in question or [are] 'specially charged with the duty to enforce the statute' and [are] threatening to exercise that duty."  See Morris v. Livingston, 739 F.3d 740, 746 (5th Cir. 2014)(quoting

Okpalobi v. Foster, 244 F.3d 405, 414-415 (5th Cir. 2001)(en banc)(quoting Ex parte Young, 209 U.S. at 157)).  "The required 'connection' is not 'merely the general duty to see that the laws of the state are implemented,' but 'the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty.'"  Id. (citations omitted).

The defendants suggest that they neither have the ability to enforce the statute at issue, nor have they demonstrated a willingness to enforce the statute.  Their argument borders on frivolous.  Ex parte Young applies.  It is clear that the defendants are tasked with the particular duty to administer and enforce La.R.S. 18:1505.2(K), the challenged statute.  See La.R.S. 18:1511.1 ("The Board of Ethics ... shall function as the supervisory committee to administer and enforce the provisions of this Chapter....").  It is equally clear, and the defendants do not dispute, that FFLF specifically alleges that the Board made clear during its January 17 public meeting that it intends to continue to apply La.R.S. 18:1505.2(K) to limit contributions to political committees like FLFF that allegedly make only independent expenditures.  The defendants have the requisite connection with the enforcement of the contribution limitation necessary to establish the applicability of the Ex parte Young exception to their sovereign immunity; the Board and its members therefore do

12

not enjoy sovereign immunity from suit.[3]

*B.*
*Article III*

"Article III of the Constitution limits federal courts' jurisdiction to certain 'Cases' and 'Controversies.'" <u>Clapper v. Amnesty Int'l USA</u>, --- U.S. ---, 133 S.Ct. 1138, 1146, 185 Led.2d 264 (2013). The plaintiff bears the burden of establishing standing and ripeness under Article III. <u>DaimlerChrysler Corp. v. Cuno</u>, 547 U.S. 332, 342 (2006); <u>Miss. State Democratic Party v. Barbour</u>, 529 F.3d 538, 545 (5th Cir. 2008).

1. Standing

To resolve the next threshold issue, the Court must be satisfied that the plaintiff has standing to challenge the contribution limit. The Court finds that it does.

"One element of the case-or-controversy requirement" commands that a litigant must have standing to invoke the power of a federal court. See <u>Clapper</u>, 133 S.Ct. at 1146 (citation omitted); <u>see also Nat'l Fed'n of the Blind of Texas, Inc. v. Abbott</u>, 647 F.3d 202, 208 (5th Cir. 2011). The doctrine of standing requires that the Court satisfy itself that "the plaintiff has 'alleged such a

---

[3]The defendants advance a separate, even weaker, argument in which they invoke "federal immunity." To the extent that the Court understands the defendants' argument, the fact that <u>Ex parte Young</u> applies, and that the plaintiff requests declaratory relief, seems to be dispositve of the defendants' suggestion that they enjoy immunity from being enjoined from taking action that is not otherwise the subject of a declaratory judgment.

personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction." See Summers v. Earth Island Institute, 555 U.S. 488, 493 (2009); see also Doe v. Beaumont Indep. Sch. Dist., 240 F.3d 462, 466 (5th Cir. 2001)(citing Warth v. Seldin, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)). "Standing to sue must be proven, not merely asserted, in order to provide a concrete case or controversy and to confine the courts' rulings within our proper judicial sphere." Doe v. Tangipahoa Parish School Bd., 494 F.3d 494, 499 (5th Cir. 2007) (noting that "[n]o amount of creative inferences from the pretrial order or 'stipulations' can overcome [the necessary proof in the record required to show standing]" and that the Board's failure to contest standing cannot create jurisdiction because standing is not subject to waiver by the parties).

The plaintiff must demonstrate the "irreducible constitutional minimum of standing", which is informed by three elements: (1) that it personally suffered some actual or threatened "injury in fact" (2) that is "fairly traceable" to the challenged action of the defendants; (3) that likely "would be redressed" by a favorable decision in Court. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).[4] The

---

[4] The actual injury requirement ensures that issues will be resolved "not in the rarified atmosphere of a debating society, but in a concrete factual context." Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 472, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982).

defendants challenge FFLF's ability to satisfy the first and second requirements: the defendants insist that FFLF's injury is speculative and the Board has taken no action to deprive FFLF of its free speech rights.  The defendants misconstrue the standing calculus in the First Amendment context.

With respect to injury-in-fact, the defendants' arguments ignore case literature applicable to the pre-enforcement challenge context present here. "The loss of First Amendment freedoms," the Fifth Circuit instructs, "for even minimal periods of time, unquestionably constitutes irreparable injury." Croft v. Governor of Texas, 562 F.3d 735, 745 (5th Cir. 2009) (quoting Elrod v. Burns, 427 U.S. 347, 373 (1976)).  One who is challenging a statute "must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement[;] . . . one does not have to await the consummation of threatened injury to obtain preventive relief."  Babbit v. United Farm Workers Nat'l Union, 442 U.S. 289, 298 (1979).  FFLF draws attention to the need for self-censorship.  In the freedom of speech context, a harm of "self-censorship . . . can be realized even without an actual prosecution." Virginia v. Am. Booksellers Ass'n, Inc., 484 U.S. 383, 393 (1988)(citations omitted).[5] "Chilling a plaintiff's speech

_____

[5]It is also worth noting that, in the First Amendment context, there is an exception to the usual rule that a party may assert only a violation of his own rights: "'[l]itigants ... are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction

is a constitutional harm adequate to satisfy the injury-in-fact requirement." Houston Chronicle Publ'q Co. v. City of League City, Texas, 488 F.3d 613, 618 (5th Cir. 2007).  "A credible threat of present or future prosecution is an injury sufficient to confer standing, even if there is no history of past enforcement." Ranqra v. Brown, 566 F.3d 515, 519 (5th Cir. 2009).   Fifth Circuit literature on this point takes a generous view.   The phrase "credible threat of prosecution is quite forgiving.  When dealing with statutes that facially restrict expressive activity by the class to which the plaintiff belongs, courts will assume a credible threat of prosecution in the absence of compelling contrary evidence."  Id.

The Court is satisfied that the plaintiff has met its Article III burden; FFLF has alleged a personal stake in the outcome of this litigation that is traceable to defendants and would be redressed by a favorable decision in Court.  First, the plaintiff alleges an injury that is concrete and actual or imminent, not hypothetical. Lujan, 504 U.S. at 560.  The plaintiff alleges that its free speech rights have been infringed.   FFLF desires to solicit and accept contributions in amounts greater than $100,000 for the purpose of making independent expenditures to support

---

or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." Virginia v. Am. Booksellers Ass'n, Inc., 484 U.S. 383 (1988)(citations omitted).

Louisiana candidates.   More specifically, the plaintiff submits that a specific prospective donor, Donald Bollinger, would contribute to FFLF (and FFLF would accept) a $125,000 contribution but both Bollinger and FFLF have declined to take such action to avoid being subjected to criminal and civil penalties; FFLF alleges that the election law restriction violates its First Amendment rights, and compliance forces self-censorship.  With respect to the threat of enforcement action, the plaintiff points to statements made by Chairman Monrose during the January 7, 2014 meeting of the Board of Ethics addressing FFLF's request for advisory opinion, in which Monrose stated:

> The law is utterly clear.  And the law I'm talking about that is utterly clear is La.R.S. 18:1505.2(K).  That is what my legislature, the legislature of the state I am in, and the Board of Ethics that I'm sitting in enacted. That is the law that they told us as the Board of Ethics to apply ... I believe that we need to apply the law ... I am going to apply it as written ... I'm just going to apply it as written until I am told that I should not do so.

The plaintiff has "alleged an actual and well-founded fear that the law will be enforced against" it.  See Am. Booksellers Ass'n, Inc., 484 U.S. at 393.

Second, the plaintiff alleges that the First Amendment injury is directly caused by Louisiana election law and the defendants' enforcement power.  La.R.S. 18:1505.2(K), the challenged provision, bars persons from contributing, and political committees like FFLF from accepting, contributions exceeding $100,000 every four years.

17

The campaign finance law charges defendants with enforcing compliance with La.R.S. 18:1505.2(K). And, plaintiff submits, the Board has stated that it must apply and enforce the law -- which contains no explicit exception for contributions to independent expenditure committees -- as it is written. This places the defendants among those who contribute to the plaintiff's claimed harm; thus, the plaintiff's injuries are traceable to the defendants' conduct.

Third, and finally, FFLF alleges that the injury to its free speech rights would be redressed by the requested injunction, which would comport Louisiana election law with constitutional mandates and U.S. Supreme Court rulings. Assuming that FFLF demonstrates that it is indeed an independent expenditure-only committee, a favorable ruling by this Court would enjoin the Board from enforcing the contribution limit, thereby permitting FFLF to accept contributions from donors like Bollinger in amounts greater than $100,000; a favorable ruling would thus permit FFLF to carry out its desired speech acts without fear that the Board would initiate an enforcement proceeding.

2.   Ripeness

Taking up another justiciability doctrine that is closely related to standing, the defendants advance arguments consistent with their standing objection in the context of this pre-enforcement challenge to Louisiana's election law: they contend

18

that this case is not ripe because there is no actual controversy; defendants suggest that because the CFDA provisions have not been applied to FFLF, "[t]he situation presented by this case is purely hypothetical."  The Court disagrees.

"The 'basic rationale [behind the ripeness doctrine] is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.'" Roark & Hardee LP v. City of Austin, 522 F.3d 533, 544 (quoting Abbott Labs. v. Gardner, 387 U.S. 136, 148 (1967)).  The two key considerations for a ripeness determination are "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." Roark & Hardee LP v. City of Austin, 522 F.3d 533, 545 (5th Cir. 2008).  "A case is generally ripe if any remaining questions are purely legal ones . . . ." Id.

This case is ripe for adjudication.  The issues presented to this Court are "purely legal" and "further factual development of the issues" would not aid the Court in its determination. See Ohio Forestry Ass'n v. Sierra Club, 523 U.S. 726, 733 (1998).  FFLF challenges the constitutionality of La.R.S. 18:1505.2(K) as applied to independent expenditure only committees; FFLF sued the Board of Ethics and its members, who are tasked with enforcing Louisiana's election law.  FFLF seeks a declaration that La.R.S. 18:1505.2(K) as applied to independent expenditure-only committees like FFLF is unconstitutional, and requests that the Court declare as such  and

enjoin the Board from enforcing this financial limit on FFLF.  To resolve this substantive legal issue, the Court need only inquire whether La.R.S. 18:1505.2(K) passes constitutional muster.  This matter is fit for judicial decision; indeed, the Court "would be in no better position to adjudicate the issues in the future than it is now."  See Pearson v. Holder, 624 F.3d 682, 684 (5th Cir. 2010).

And the plaintiff has asserted injuries sufficient to establish hardship if the Court delays adjudication.  See Thomas v. Union Carbide Agric. Products Co., 473 U.S. 568, 581 (1985)(requiring a regulated party "to proceed without knowing whether the [statute] is valid would impose a palpable and considerable hardship.").  As the Court previously observed: "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."  Cf. Croft v. Governor of Texas, 562 F.3d 735, 745 (5th Cir. 2009) (citation omitted).  FFLF's dilemma between, on the one hand, choosing to continue to self-censor itself by complying with the challenged provision, or, on the other hand, accepting donations exceeding the $100,000 limit, reporting them in compliance with the Act, and facing enforcement proceedings and accompanying penalties.  Even if FFLF chooses to risk enforcement proceedings, those proceedings would not resolve the federal constitutional issue presented to the Court.  See Chamber of Commerce v. FEC, 69 F.3d 600, 604 (D.C. Cir. 1995).  The plaintiff has asserted the

20

requisite hardship.[6]   The constitutional validity of La.R.S. 18:1505.2(K) is ripe.

III.

Because the Court has jurisdiction, the plaintiff has standing, and the matter is ripe for judicial review, the Court turns to the defendants' remaining arguments: that the plaintiff's claim is technically insufficient to state a claim, that abstention is appropriate, and that venue is improper or inconvenient.

*A.*

The defendants seek dismissal of the plaintiff's complaint for declaratory and injunctive relief on the ground that FFLF fails to state a claim for relief.  The defendants urge the Court to dismiss FFLF's lawsuit because the plaintiff has not demonstrated that it is an independent expenditure political committee.  The defendants miss the mark and ignore the clear instructions of <u>Twombly</u> and <u>Iqbal</u>.  FFLF quite directly alleges that it "is an independent expenditure-only political action committee" that "does not and will not make contributions to, or coordinated expenditures on behalf of, candidates or political party committees", and that

---

[6]Because a violation of the contribution limits carries with it a penalty of up to $1,000 per violation, La.R.S. 15:18505.5(B)(5), defendants suggest in their papers that the $1,000 sanction levied against FFLF or Mr. Bollinger would simply reduce the desired contribution of $125,000 to $124,000.  Arguments like this compel the Court to remind counsel of their professional obligations under Rule 11 of the Rules of Civil Procedure and 28 U.S.C. § 1927.

21

"[a]ll decisions concerning expenditures of FFLF's funds are made independent of any candidate, campaign, party committee, or their agents." Further, FFLF alleges that at least one named prospective donor would make, and it would accept, a contribution above Louisiana's contribution limit "but for Louisiana's prohibition on soliciting and accepting contributions and the penalties for doing so." These allegations include "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Gonzalez v. Kay, 577 F.3d 600, 603 (5th Cir. 2009)(quoting Iqbal, 129 S.Ct. at 1949 (2009))(internal quotation marks omitted); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).").

Notably, the defendants do not dispute that truly independent expenditure committees qualify for a free speech safe harbor such that, assuming FFLF proves its allegations that it is an independent expenditure-only committee, Louisiana's prohibitory limit on contributions to such independent committees cannot withstand First Amendment scrutiny. See, e.g., Citizens United v. FEC, 558 U.S. 310, 357 (2010)("independent expenditures...do not give rise to corruption or the appearance of corruption"); Ariz. Free Enter. Club's Freedom Club PAC v. Bennett, 131 S.Ct. 2806,

22

2826-27 (2011)(noting that, with independent expenditures, "[t]he candidate-funding circuit is broken," thereby "negat[ing] the possibility that [the] expenditures will result in the sort of *quid pro quo* corruption with which our case law is concerned"); see also SpeechNow.org v. FEC, 599 F.3d 686, (D.C.Cir. 2010)(holding that provision limiting contributions by individuals to political committees that made only independent expenditures violated the First Amendment).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. At this stage, to survive a Rule 12(b)(6) challenge to the technical sufficiency of its allegations, FFLF must simply state, not prove, its claim.  Thus, the defendants' arguments concerning whether or not FFLF is independent are better directed to a merits inquiry. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949.

*B.*

The defendants would hope that the Court can be persuaded to abstain under Burford or Younger.  But the Court is not presented with extraordinary circumstances warranting abstention.

Federal courts have a "virtually unflagging obligation ... to

exercise the jurisdiction given them." Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976)(abstention is an extraordinary and narrow exception to the court's duty to adjudicate a controversy properly before it).

Burford abstention may be appropriate when the case involves unsettled state law and federal adjudication would disrupt a state's effort to establish a coherent administrative policy in areas that are traditionally subject to state regulation. Burford v. Sun Oil Co., 319 U.S. 315, 318 (1943). The defendants submit that the Court should be reluctant to intrude into the complex state regulatory system governing campaign finance. But the defendants fail to show that sufficient state court review is available, or that a special case is presented here, where the Court is confronted with a discrete constitutional issue, implicating federal constitutional rights, that is not entangled in a state regulatory process. This case presents a question of federal law; no unsettled issues of state law are implicated.

Defendants couple this argument with Younger abstention. Younger v. Harris, 401 U.S. 37 (1971). "When there is a parallel, pending state criminal proceeding [or state civil proceedings akin to criminal prosecutions]," the Supreme Court has explained Younger abstention, "federal courts must refrain from enjoining the state prosecution." Spring Communications, Inc. v. Jacobs, 134 S.Ct. 584, 588 (2013). Three factors must be met in order for the Younger

24

abstention doctrine to apply: "(1) the dispute must involve an 'ongoing state judicial proceeding,' (2) an important state interest in the subject matter of the proceeding must be implicated, and (3) there should be an 'adequate opportunity in the state proceeding to raise constitutional challenges.'" <u>Wightman v. Tex. Supreme Ct.</u>, 84 F.3d 188, 189 (5th Cir. 1996)(citations omitted). <u>Younger</u> abstention is not warranted here. This case presents no exceptional circumstances. Furthermore, there is no ongoing state proceeding and, even assuming an important state interest (in the federal constitutional issue raised here), the defendants fail to even suggest what opportunity the plaintiff has to raise its federal constitutional challenge.

*C.*

Defendants next seek the shelter of venue and dismiss the Eastern District as inconvenient. But because the plaintiff has carried its burden to establish proper venue, and because venue is not "clearly more convenient" in the Middle District, the Court disagrees.

Venue is governed by 28 U.S.C. § 1391(b), which provides that a civil action may be brought in

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
> (3) if there is no district in which an action may

25

> otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). Plaintiff submits that venue is proper here under § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred in the Eastern District of Louisiana. "When venue is challenged, the burden is on the plaintiff to establish that the district he chose is a proper venue." Ross v. Digioia, No. 11-1827, 2012 WL 72703, at *2 (E.D. La. Jan. 10, 2012) (citing Perez v. Pan Am. Life Ins. Co., 70 F.3d 1268 (5th Cir. 1995)(unpublished, per curiam)). For purpose of a Rule 12(b)(3) motion, the Court must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff. Braspetro Oil Servs., Co. v. Modec (USA), Inc., 240 F. App'x 612, 615 (5th Cir. 2007). Further, in deciding whether venue is proper, the Court may look outside the complaint and its attachments. Amraco Inc. v. Bossclip B.V., 570 F.3d 233, 238 (5th Cir. 2009).

The defendants contend that venue is improper and inconvenient in this district and the case should be transferred to the Middle District. They submit that no acts were performed in the Eastern District, that any argument that FFLF seeks to secure contributions in the Eastern District is irrelevant, and that any infringement in the form of an enforcement proceeding would occur in Baton Rouge,

the Middle District.

As to venue, FFLF counters:

22.   Venue is proper in this Court under 28 U.S.C. § 1391(b) because FFLF is located within this District, FFLF's constitutional rights have been and continue to be violated by Defendants in this District, and Defendants the Board and Members of the Board reside in the State of Louisiana.

FFLF contends that venue is proper in this District because a substantial part of the events or omissions giving rise to its claims occurred here; FFLF reminds that its principal place of business is in the Eastern District, that Mr. Bollinger resides in the Eastern District, that plaintiff's First Amendment rights have been denied in the Eastern District due to its inability to accept a contribution of $125,000 from Bollinger.

Plaintiff has met its burden at this stage to show that a substantial part of the events giving rise to FFLF's claims occurred in the Eastern District.   The defendants suggest that plaintiff improperly focuses only on where it is located and fails to acknowledge where the defendants reside.   But the focus on the venue provision invoked by plaintiff is on where a substantial part of the events or omissions giving rise to the claim occurred; here, uniquely in the context of pre-enforcement self-censorship, the location of the plaintiff is relevant to the § 1391(b) inquiry. Defendants ignore the reality here, which is that venue may be proper in more than one District.

Turning to the defendants' argument of inconvenience, they

27

urge the Court to transfer this matter to the Middle District of Louisiana.

The Court may transfer an action to a more convenient forum as long as the transferee court is one in which the action could have been initially brought. 28 U.S.C. § 1404(a)("For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."). Indeed, the Court has broad discretion in determining whether to transfer a case pursuant to § 1404(a). Balawajder v. Scott, 160 F.3d 1066, 1067 (5th Cir. 1998)(quoting Caldwell v. Palmetto State Sav. Bank, 811 F.2d 916, 919 (5th Cir. 1987)). The plaintiff's choice of forum places a "good cause" burden on the defendant seeking transfer. In re Voskwagen of America, Inc., 545 F.3d 304, 315 n.10 (5th Cir. 2008)(en banc)("Volkswagen II"); In re TS Tech USA Corp., 551 F.3d 1315, 1320 (Fed. Cir. 2008). That means the moving party must show that transfer is "clearly more convenient." Volkswagen II, 545 F.3d at 315. The defendants have not done so.

The Court must determine whether defendants have demonstrated that the Middle District of Louisiana is "clearly more convenient" than the Eastern District of Louisiana.[7] To do so, the Court

---

[7]It is undisputed that this lawsuit could have been brought in the Middle District of Louisiana; venue would be proper there under § 1391(b)(1) because the defendants reside in the Middle District. The parties dispute whether the Middle District is a clearly more convenient venue than the Eastern District.

balances relevant private and public interest factors.  To weigh

the convenience of the two forums, the Fifth Circuit has observed,

the Court considers private interest factors such as:

> (1)   the relative ease of access to sources of proof;
> (2)   the availability of compulsory process to secure the attendance of witnesses;
> (3)   the cost of attendance for willing witnesses;
> (4)   all other practical problems that make trial of a case, easy, expeditious, and inexpensive;

as well as public interest factors such as:

> (1)   the administrative difficulties flowing from court congestion;
> (2)   the local interest in having localized interests decided at home;
> (3)   the familiarity of the forum with the law that will govern the case; and
> (4)   the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law.

Volkswagen II, 545 F.3d at 314.  Just as this list of factors is

not exhaustive, nor is any one factor of dispositive weight.  Id.

Also, importantly, the plaintiff's choice of venue is not a factor

in the analysis; rather, it informs the defendant's burden in

proving that the transferee venue is "clearly more convenient" than

the transferor venue.  Id. at 315.  While the defendants pick and

choose which factors they suggest favor transfer, the defendants'

argument is sparsely supported; they fall short of carrying their

burden to show that venue in the Middle District is clearly more

convenient in this case, which focuses a purely legal challenge;

the transferor and transferee districts are only 82 miles apart;

and most of the factors, to the extent they apply, are neutral.

Accordingly, the defendants' motion to dismiss or abstain or transfer is DENIED.

New Orleans, Louisiana, April 16, 2014

MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE