UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

THE FUND FOR LOUISIANA'S FUTURE         CIVIL ACTION

v.                                              NO. 14-0368

LOUISIANA BOARD OF ETHICS, ET AL.          SECTION "F"

ORDER AND REASONS

Before the Court is the plaintiff's motion for preliminary and permanent injunction.  For the reasons that follow, the motion is GRANTED.

Background

This litigation arises out of a constitutional challenge to a Louisiana campaign finance provision of law that limits the amount of money that may be contributed to, or accepted by, a political committee, regardless of the committee's independence.

The Fund for Louisiana's Future is a political organization registered with the Federal Election Commission as a federal independent expenditure-only committee, commonly referred to as a "Super PAC", and also registered with the Louisiana Supervisory Committee on Campaign Finance Disclosure as a state "political committee."  FFLF was established by Charles R. Spies, he submits, to make independent expenditures in support of conservative candidates in federal, state, and local elections in Louisiana, in the form of television, radio, print, internet, and telephone

1

advertisements.  Mr. Spies swears that FFLF does not and will not make contributions to, or coordinated expenditures on behalf of, candidates or political party committees; that all decisions concerning expenditures of FFLF's funds are made independent of any candidate, campaign, party committee, or their agents.[1]  FFLF wants to solicit and accept contributions in amounts greater than $100,000 per person so that it can make independent expenditures to support Louisiana state and local candidates; it alleges that it would do so but for Louisiana's statutory prohibition on (and penalties for) soliciting and accepting such contributions that exceed $100,000 every four years.[2]

FFLF filed a complaint for declaratory and injunctive relief against the Louisiana Board of Ethics and its members:  it seeks (a) a declaration that the $100,000 contribution limit contained in La.R.S. 18:1505.2(K) is unconstitutional as applied to committees like FFLF that engage only in independent expenditures; and (b) preliminary and permanent injunctions enjoining the defendants from enforcing La.R.S. 18:1505.2(K) as applied to contributions to political committees that make only independent expenditures; and

---

[1]FFLF submits Spies' declaration in support of its allegation that FFLF is an independent expenditure-only committee. Defendants question FFLF's independence, but in a perfunctory way.

[2]FFLF specifies that, in fact, at least one prospective donor, Donald T. Bollinger, wants to contribute at least $125,000 right now, but he cannot do so in light of Louisiana's contribution cap.

(c) costs and attorneys' fees pursuant to 42 U.S.C. § 1988.

Campaign finance in Louisiana is governed by the Louisiana Campaign Finance and Disclosure Act, La.R.S. 18:1481, et seq. La.R.S. 18:1483(a)(i) defines "political committee" as

> two or more persons, other than a husband and wife, and any corporation organized for the primary purpose of supporting or opposing one or more candidates, propositions, recalls of a public officer, or political parties, which accepts contributions in the name of the committee, or makes expenditures from committee funds or in the name of the committee, or makes a transfer of funds to or receives a transfer of funds from another committee, or receives or makes loans in an aggregate amount in excess of five hundred dollars within any calendar year....

A "contribution" means

> a gift, conveyance, payment or deposit of money or anything of value, or the forgiveness of a loan or of a debt, made for the purpose of supporting, opposing, or otherwise influencing the nomination or election of a person to public office, for the purpose of supporting or opposing a proposition or question submitted to the voters, or for the purpose of supporting or opposing the recall of a public officer, whether made before or after the election.

La.R.S. 18:1483(6)(a). With respect to expenditures, La.R.S. 18:1483(6)(b)(i) provides that "expenditures made by any person in cooperation, consultation or concert, with, or at the request or suggestion of, a candidate, his authorized political committees, or their agents ... shall be considered to be a contribution to such candidate."

La.R.S. 18:1505.2(K), entitled "Contributions; expenditures; certain prohibitions and limitations", the target of plaintiff's

3

constitutional challenge, provides:

> K. (1) During any four year calendar period commencing January 1, 1991 and every fourth year thereafter, no person shall contribute more than one hundred thousand dollars to any political committee or any subsidiary committee of such political committee, other than the principal or any subsidiary committee of a candidate. Such limitation on a contribution shall not apply to any contribution from a national political committee to an affiliated regional or state political committee.
> (2) During the time period provided for in Paragraph (1) of this Subsection, no political committee or subsidiary of such political committee, other than the principal any subsidiary committee of a candidate, shall accept more than one hundred thousand dollars from any person.

A violation of the contribution limits carries with it penalties up to $1,000 per violation.  La.R.S. 18:1505.5(B)(5).  (The Act does not define "independent expenditure"; nor does the Act exclude from its regulations political committees that do not coordinate expenditures on behalf of candidates or party committees.  Rather, the campaign finance laws and regulations apply equally to all political committees, even committees that make only independent expenditures.)

The Louisiana Board of Ethics for Elected Officials[3] acts as the Supervisory Committee on Campaign Finance Disclosure; it is the state agency responsible for administrative and enforcement of the Louisiana Campaign Finance and Disclosure Act.  La.R.S. 18:1511.1 provides:

---

[3]The Board is a constitutionally mandated (La. Constitution, Article X, Section 21) and statutorily created administrative agency (La.R.S. 42:1132).

4

A.   The Supervisory Committee on Campaign Finance
Disclosure is established.   The Board of Ethics, as
established in R.S. 42:1132, shall function as the
supervisory committee to administer and enforce the
provisions of this Chapter and the rules, regulations,
and orders issued hereunder.  The members of the Board of
Ethics shall constitute the supervisory committee.
...
C.   The members of the supervisory committee shall be
immune from any civil liability for any official action
taken in the exercise of their functions pursuant to or
in connection with the provisions of this Chapter, except
any wrongful and malicious act or gross negligence.

To enable it to investigate alleged violations effectively and enforce compliance with the Code's provisions, the Board has the authority to "hold hearings, to subpoena witnesses, administer oaths, compel the production of books, records, and papers, public and private, require the submission under oath of written reports or answers to questions." La.R.S. 18:1511.4(C)(1).  The Board also has the authority to render advisory opinions.  La.R.S. 18:1511.2(B).  And, the Board has the authority to "forward all information concerning the alleged violation to the district attorney of the judicial district in which the alleged violation has occurred who shall review such information and make such investigation and initiate such prosecution as he shall deem necessary." La.R.S. 18:1511.6(A).

Driven by La.R.S. 18:1505.2(K)'s contribution limit, FFLF sought an advisory opinion from the Board pursuant to La.R.S. 42:1134 to determine the extent to which it could raise contributions and make independent expenditures after the U.S.

Supreme Court's decision in <u>Citizens United v. Federal Election</u> <u>Commission</u>, 558 U.S. 310 (2010) and its progeny.  In addressing FFLF's request at its January 17, 2014 public meeting, the Board stated its intention to continue to apply and enforce La.R.S. 18:1505.2(K).  Thereafter, the Board "decline[d] to render an opinion regarding the constitutionality of provisions of the Campaign Finance Disclosure Act."

On February 18, 2014 FFLF filed its complaint for declaratory and injunctive relief in this Court against the Board and its members in their official capacities, M. Blake Monrose, in his official capacity as Chair of the Board; Julie E. Blewer, in her official capacity as Vice Chair of the Board; Terry Backhaus, in his official capacity as Board member; Charles Emile Bruneau, Jr., in his official capacity as Board member; Jean Ingrassia, in her official capacity as Board member; William J. Larzelere, Jr., in his official capacity as Board member; Louis Leggio, in his official capacity as Board member; Steve Lemke, in his official capacity as Board member; Bob McAnelly, in his official capacity as Board member; Ashley Kennedy Shelton, in her official capacity as Board member; and Grove Stafford, in his official capacity as Board member.  FFLF seeks to enjoin the Board defendants' application and enforcement of La.R.S. 18:1505.2(K), which caps contributions to political committees at $100,000 every four years and correspondingly precludes a political committee's acceptance of an

6

amount exceeding the $100,000 cap.  FFLF urges that, as applied to it, the Code's contribution limit serves no legitimate governmental interest and is neither narrowly tailored nor closely drawn to further such an interest.  For this reason, FFLF submits, La.R.S. 18:1505.2(K) violates FFLF's rights to freedom of speech and freedom of association under the First and Fourteenth Amendments to the U.S. Constitution.

Advancing a litany of grounds, the defendants moved to dismiss the plaintiff's complaint for declaratory and injunctive relief and, alternatively, requested that the Court abstain from deciding this matter, or transfer it for improper or inconvenient venue.  On April 16, 2014 the Court denied the defendants' motion.  Claiming an ongoing infringement on its First Amendment right to engage in protected political speech, the plaintiff now seeks injunctive relief, as an independent expenditure-only committee.[4]  The challenged law, the plaintiff contends, as applied, violates the First and Fourteenth Amendments to the U.S. Constitution by restricting independent political advocacy that, as a matter of

---

[4]The plaintiff filed its request for preliminary injunctive relief along with its complaint on February 18, 2014. Thereafter, the Court issued an order advising that it would simultaneously take up the plaintiff's request for permanent injunctive relief.  <u>See</u> Order dated March 18, 2014; <u>see also</u> Fed.R.Civ.P. 65(a)(2)("Before or after beginning the hearing on a motion for preliminary injunction, the court may advance the trial on the merits and consolidate it with the hearing....").  Since then, both sides have had ample opportunity to submit briefing and supplemental briefing as directed by the Court.

law, poses no risk of corruption.

I.

A.

Rule 65 of the Federal Rules of Civil Procedure sets forth the general procedure applicable to the pursuit of injunctive relief and orders enjoining offending conduct.  See Fed.R.Civ.P. 65.  The substantive prerequisites applicable to proving entitlement to injunctive relief are well-settled in the case literature:

> "[A] plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." eBay Inc. v. MercExchange, L.L. C., 547 U.S. 388, 391, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006).

Monsanto Co. v. Geerston Seed Farms, 561 U.S. 139, ---, 130 S.Ct. 2743, 2756, 177 L.Ed.2d 461 (2010); Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 32 (2008)(citation omitted)(observing that the standards applicable to requests for preliminary and permanent injunctive relief "are essentially the same ... with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success" when seeking a preliminary injunction.); ITT Educational Services, Inc. v. Arce, 533 F.3d 342, 347 (5th Cir. 2008); Dresser-Rand Co. v. Virtual Automation Inc., 361 F.3d 831, 847 (5th Cir. 2004)("for

8

a permanent injunction to issue the plaintiff must prevail on the merits of his claim and establish that equitable relief is appropriate in all other respects").[5]

"A permanent injunction is generally only granted where ... a full trial on the merits has occurred." ITT Educational Services, Inc. v. Arce, 533 F.3d 342, 347 (5th Cir. 2008)(citing Univ. of Tex. v. Caminsch, 451 U.S. 390, 396 (1981)), or where the party seeking injunctive relief otherwise has demonstrated entitlement to judgment as a matter of law. See, e.g., Fed.R.Civ.P. 65(a)(2)("Before or after beginning the hearing on a motion for preliminary injunction, the court may advance the trial on the merits and consolidate it with the hearing...."); O'Connor v. Smith, 427 Fed.Appx. 359, 365 (5th Cir. 2011)(citations omitted). In appropriate circumstances, such as the record before the Court, the Court may grant summary relief on the merits.

*B.*

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine issue as to any material fact such that the moving party is entitled to

---

[5]This four-factor test applicable to prove entitlement to a permanent injunction has been alternatively articulated as requiring that the plaintiff prove: (1) actual success on the merits, (2) that the failure to grant injunctive relief will result in irreparable injury, (3) the injury outweighs any damage that the injunction will cause the opposing party, and (4) the injunction will not disserve the public interest. See O'Connor v. Smith, 427 Fed.Appx. 359, 365 (5th Cir. 2011)(citations omitted).

judgment as a matter of law.  No genuine issue of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio., 475 U.S. 574, 586 (1986).  A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion.  See id.  Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate.  Id. at 249-50 (citations omitted).  Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party.  See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992).  Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claims.  Id.  Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence.  Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987); Fed.R.Civ.P. 56(c)(2).  Finally, in evaluating summary

judgment, the Court must read the facts in the light most favorable to the non-moving party.  <u>Anderson</u>, 477 U.S. at 255.

II.

A. Campaign Finance Regulation: General Principles

The First Amendment to the United States Constitution declares that "Congress shall make no law ... abridging the freedom of speech."  U.S. CONST. amend. I.  "Speech is an essential mechanism of democracy," the U.S. Supreme Court has observed, "for it is the means to hold officials accountable to the people."  <u>Citizens United v. FEC</u>, 558 U.S. 310, 339 (2010).  Notably, "[t]he First Amendment 'has its fullest and most urgent application' to speech uttered during a campaign for political office."  <u>See id.</u> at 339-40 (citation and quotation omitted); <u>see also</u> <u>Buckley v. Valeo</u>, 424 U.S. 1, 14 (1976)(per curiam)("Discussion of public issues and debate on the qualifications of candidates are integral to the operation of the system of government established by our Constitution").  Thus, in the context of political speech, statutory "contribution and expenditure limitations operate in an area of the most fundamental First Amendment activities."  <u>Buckley</u>, 424 U.S. at 14, 19 ("A restriction on the amount of money a person or group can spend on political communication ... necessarily reduces the quantity of expression by restricting the number of issues discussed, the depth of their exploration, and the size of the audience reached.").

Given its value, "political speech must prevail against laws that would suppress it, whether by design or inadvertence." Citizens United, 558 U.S. at 340. Generally, "[l]aws that burden political speech are 'subject to strict scrutiny,' which requires the [g]overnment to prove that the restriction 'furthers a compelling interest and is narrowly tailored to achieve that interest.'" See id. (citation omitted). By contrast, where a State limits "the amount that any one person or group may contribute [directly] to a candidate or political committee," the State's burden is slightly lighter: it need only show that the restriction is "closely drawn" to serve a "sufficiently important interest." See Buckley, 424 U.S. at 25; see also Arizona Free Enter. Club's Freedom Club PAC v. Bennett, 546 U.S. ---, 131 S.Ct. 2806, 2817 (2011)(noting that a lower level of scrutiny, requiring that the restriction at issue be "closely drawn" to serve a "sufficiently important interest", has been applied in some circumstances, including limits on contributions to candidates; caps on coordinated party expenditures; and requirements that political funding sources disclose their identities).

The High Court recently has reminded us that the prevention of *quid pro quo* corruption is the only relevant governmental interest that can potentially justify restrictions on political speech. McCutcheon v. FEC, 572 U.S. ---, 134 S.Ct. 1434, 1450 (2014)(observing that "while preventing corruption or its

12

appearance is a legitimate objective, Congress may target only a specific type of corruption–'quid pro quo' corruption", and noting that Congress may permissibly limit the appearance of corruption in the context of contributions to particular candidates); Citizens United, 558 U.S. at 359 ("When Buckley identified a sufficiently important governmental interest in preventing corruption or the appearance of corruption, that interest was limited to *quid pro quo* corruption"); Republican Party of New Mexico v. King, 741 F.3d 1089, 1096-97 (10th Cir. 2013)("Citizens United resolved a longstanding debate over whether other governmental interests could support restrictions on campaign financing ... but the Court repudiated them all").  Significantly, for the purpose of the present constitutional challenge, "independent expenditures...do not give rise to corruption or the appearance of corruption." Citizens United, 558 U.S. at 357. Citizens United defines a matter of law.  This is so "because spending without 'prearrangement and coordination' with a candidate 'alleviates the danger that expenditures will be given a *quid pro quo* for improper commitments from the candidate.'"  Texans for Free Enter. v. Texas Ethics Comm'n, 732 F.3d 535, 537 (5th Cir. 2013)(quoting Citizens United, 558 U.S. at 357 (citing Buckley, 424 U.S. at 47)).

Where a State enforces restrictions in the political speech context, the critical distinction to be made, then, is whether money is given to or spent in coordination with candidates, or

whether the campaign spending is independent of candidates.  A State may only restrict contributions to candidates in conformance with the First Amendment because of the risk that such contributions will lead to *quid quo pro* corruption.  But independent expenditures present not even a marginal risk of corruption; by their very nature, in law, they present no hazard of corruption and, thus, the State's restrictions on uncoordinated, independent political speech cannot pass constitutional muster.  In Citizens United v. FEC, a corporation challenged a federal election code ban on independent expenditures (in the form of a publicly-distributed broadcast or satellite communications) made by corporations when the expenditures advocated for or against a candidate close in time to an election.  Citizens United had produced a documentary film highly critical of then-Senator Hillary Clinton, who was contesting for President during the Democratic primaries; it challenged the FECA ban.  The Supreme Court overruled Austin v. Mich. Chamber of Commerce, 494 U.S. 652 (1990), in which a plurality of the Court had found a compelling government interest in preventing corporations from "unfairly influencing elections"; the High Court struck down the offending provision, and held that restricting independent expenditures merely because of the corporate identity of the speaker was incompatible with the First Amendment.  Id. at 365.  "Limits on independent expenditures ... have a chilling effect well beyond the [g]overnment's interest in

preventing *quid pro quo* corruption." <u>Id.</u> at 357.  "[I]ndependent expenditures...do not give rise to corruption or the appearance of corruption" because "[b]y definition," independent expenditures are "political speech presented to the electorate that is not coordinated with a candidate." <u>Id.</u> at 345, 357, 360 (citation omitted)(the touchstone is the "absence of prearrangement and coordination [that] alleviates the danger that expenditures will be given as a *quid pro quo* for improper commitments from the candidate.").  In the real world of campaign finance, with independent expenditures "[t]he candidate-funding circuit is broken," thereby "negat[ing] the possibility that [the] expenditures will result in the sort of quid pro quo corruption with which our case law is concerned." <u>See</u> <u>Arizona Free Enter.</u> <u>Club's Freedom Club PAC v. Bennett</u>, 131 S.Ct. 2806, 2826-27 (2011)(citation omitted).

Endorsing the Supreme Court's pronouncement that independent expenditures, as a matter of law, do not give rise to corruption, seven U.S. Courts of Appeals, including the Fifth Circuit, and a number of U.S. District Courts have taken <u>Citizens United</u> one step further in the face of challenges to the constitutional legitimacy of limits on *contributions to* independent expenditure-only organizations; those courts have universally agreed that such limits do not withstand First Amendment scrutiny. <u>See</u>, <u>e.g.</u>, <u>Republican Party of New Mexico v. King</u>, 741 F.3d 1089, 1096-97 (10th

Cir. 2013); <u>New York Progress and Protection PAC v. Walsh</u>, 733 F.3d 483, 487 (2d Cir. 2013); <u>Texans for Free Enterprise v. Texas Ethics Comm'n</u>, 732 F.3d 535, 537-38 (5th Cir. 2013); <u>Wis. Right to Life State Political Action Comm. v. Barland</u>, 664 F.3d 139, 154 (7th Cir. 2011); <u>Thalheimer v. Ciity of San Diego</u>, 645 F.3d 1109, 1121 (9th Cir. 2011); <u>Long Beach Area Chamber of Commerce v. City of Long Beach</u>, 603 F.3d 684, 696 (9th Cir. 2010), <u>cert.</u> <u>denied</u>, 131 S.Ct. 392 (2010); <u>SpeechNow.org v. FEC</u>, 599 F.3d 686, 694-96 (D.C. Cir. 2010)(en banc), <u>cert.</u> <u>denied</u>, <u>Keating v. FEC</u>, 131 S.Ct. 553 (2010); <u>N.C. Right to Life, Inc. v. Leake</u>, 525 F.3d 274, 292-93 (4th Cir. 2008)(pre-<u>Citizens United</u>); <u>New York Progress and Protection PAC v. Walsh</u>, No. 13-6769, 2014 WL 1541781, at *2-4 (S.D. N.Y. Apr. 24, 2014)(enjoining defendants from applying and enforcing contribution limits provision of New York election law against the plaintiff independent committee and its individual donors, and noting that the Second Circuit in <u>Walsh</u>, 733 F.3d at 487 n.1, in reversing the court's previous denial of preliminary injunctive relief, "clearly directed the [c]ourt to strike down the limit on contributions to independent PACs"); <u>Vt. Right to Life Comm., Inc. v. Sorrell</u>, 875 F. Supp. 2d 376, 403-04 (D. Vt. 2012); <u>Yamanda v. Weaver</u>, 872 F. Supp. 2d 1023, 1042-43 (D. Haw. 2012); <u>Lair v. Murry</u>, 871 F. Supp. 2d 1058, 1068 (D. Mont. 2012); <u>Personal PAC v. McGuffage</u>, 858 F. Supp. 2d 963, 968-69 (N.D. Ill. 2012); <u>Stay the Course W.Va. v. Tennant</u>, No. 12-1658, 2012 WL 3263623, at *6 (S.D. W.Va. Aug. 9,

2012).  Citizens United, Texans for Free Enterprise, and these other, persuasive authorities inform and govern the outcome of this case.

*B.*

Mindful of the standards of review and the general principles just outlined, the Court turns to determine whether FFLF has carried its burden of showing entitlement to permanent injunctive relief.

1.  Actual Success on the Merits

Assuming that FFLF is an independent expenditure-only committee, regardless of which level of scrutiny applies, La.R.S. 18:1505.2(K)'s contribution limit as applied to it violates the First Amendment.[6]  Defendants' contrary arguments wholly fail.[7]

---

[6]As the Court previously observed when  it denied the defendants' dispositive motion:

> Notably, the defendants do not dispute that truly independent expenditure committees qualify for a free speech safe harbor such that, assuming FFLF proves its allegations that it is an independent expenditure-only committee, Louisiana's prohibitory  limit on contributions to such independent committees cannot withstand First Amendment scrutiny.  See, e.g., Citizens United v. FEC, 558 U.S. 310, 357 (2010)("independent expenditures...do not give rise to corruption or the appearance of corruption"); Ariz. Free Enter. Club's Freedom Club PAC v. Bennett, 131 S.Ct. 2806, 2826-27 (2011)(noting that, with independent expenditures, "[t]he candidate-funding circuit is broken," thereby "negat[ing] the possibility that [the] expenditures will result in the sort of *quid pro quo* corruption

with which our case law is concerned"); <u>see also SpeechNow.org v. FEC</u>, 599 F.3d 686, (D.C.Cir. 2010)(holding that provision limiting contributions by individuals to political committees that made only independent expenditures violated the First Amendment).

<u>See</u> Order and Reasons 4/16/14; <u>see also New York Progress and Protection PAC v. Walsh</u>, No. 13-6769, 2014 WL 1541781, at *3 (S.D. N.Y. Apr. 24, 2014)("[o]nce it is determined that [plaintiff] is an independent expenditure-only organization, there is little left for the [c]ourt to do....").

[7]"Few contested legal questions are answered so consistently by so many courts and judges." <u>New York Progress and Protection PAC v. Walsh</u>, 733 F.3d 483, 488 (2d Cir. 2013). Remarking, similarly, "[w]e tread a well-worn path", the Fifth Circuit observed that:

> every federal court that has considered the implications of <u>Citizens United</u> on independent groups like [Texans for Free Enterprise] has been in agreement: There is no difference in principle--at least where the only asserted state interest is in preventing apparent or actual corruption--between banning an organization such as [plaintiff] from engaging in advocacy and banning it from seeking funds to engage in that advocacy....

<u>Texans for Free Enterprise v. Texas Ethics Comm'n</u>, 732 F.3d 535, 537-38 (5th Cir. 2013). In <u>Texans for Free Enterprise</u>, the Fifth Circuit affirmed the grant of preliminary injunctive relief enjoining the Texas Ethics Commission from enforcing a Texas election code provision that banned "unauthorized contributions", regardless of whether the relevant political committee makes only direct campaign expenditures (as opposed to making direct contributions to candidates). In so doing, the Fifth Circuit noted that the case was "one step removed from <u>Citizens United</u>" in that "[i]nstead of banning Citizens United from producing its movie, the Texas code provisions would instead have forbidden Citizens United from giving money to another political group so that *that* group would produce and distribute the film ... and the statute would have prohibited Citizens United from accepting donations from other corporations so that Citizens United could produce the film during

18

"By definition," independent expenditures are "political speech presented to the electorate that is not coordinated with a candidate" and, therefore, the State lacks any interest (anti-corruption or otherwise) in restricting contributions for independent expenditures.  See Citizens United, 558 U.S. at 357, 360.  Donors have an absolute, unfettered First Amendment interest in contributing money to be used for independent purposes in politics, and the State simply has no legitimate interest in restricting such contributions.  See SpeechNow.org., 599 F.3d at 694-95.  In short, independent expenditure committees are sacrosanct under the First Amendment.

The State defends its law as applied to FFLF on anti-circumvention grounds and on the ground that FFLF is a "single-candidate" committee.  But FFLF's request for injunctive relief rests solely on its submission that it is an independent expenditure-only committee:  FFLF concedes that limits on contributions to groups whose expenditures are coordinated, directly or indirectly with political candidates or their agents could certainly withstand First Amendment scrutiny.  In support of its promise that it is an independent political committee, FFLF submits a sworn, and quite specific, declaration of its founder,

---

the election season."  Id. (emphasis in original).  Defendants' attempts to distinguish the case literature on this point is impotent at best.

Charles Spies; he declares:

    ...

        2.  I am the Treasurer of the Fund for Louisiana's
Future ("FFLF").

        3.    FFLF  is  an  independent  expenditure-only
political  action  committee  that  is  registered  with  the
Louisiana  Committee  on  Campaign  Finance  Disclosure  (the
"Supervisory    Committee")    as    a    state    "political
committee."    It    discloses    its    contributions    and
expenditures   with   the   Supervisory   Committee.     Its
principal place of business is 6048 Marshall Foch Street,
New Orleans, LA 70124.

        4.    FFLF   was   established   to   make   independent
expenditures  in  support  of  conservative  candidates  in
federal,   state   and   local   elections   in   Louisiana,
primarily   in   the   form   of   television,   radio,   print,
internet   and   telephone   advertisements.   FFLF's   only
expenditures to influence elections in Louisiana are and
will be independent of any candidate or candidates.

        5.  FFLF does not and will not make contributions
to, or coordinated expenditures on behalf of, candidates
or political party committees.

        6.  FFLF's independent expenditures are not and will
not be made in cooperation, consultation, or concert,
with, or at the request or suggestion of, any candidates,
their authorized political committees, or their agents.
All decisions concerning the expenditure of FFLF's funds
are made independent of any candidate, campaign, party
committee, or their agents.

        7.  FFLF was established by me.  I am an experienced
attorney specializing in political law, I have worked at
the Federal Election Commission, and have over a decade
of experience advising corporations, trade associations,
candidates, campaigns, political parties, and independent
expenditure-only groups, like FFLF.  For example, during
the 2012 Presidential election, I was the founder and
treasurer of the largest Super PAC in history, Restore
Our Future, Inc., which supported the candidacy of Mitt
Romney.  Restore Our Future, Inc. did not coordinate any
of its expenditures with Mitt Romney or his campaign.  As
a result of my experiences, I am acquainted with numerous
individuals  and  business  entities  who  regularly  make
large contributions to support political advocacy.

        8.  FFLF was not established, financed, maintained,
or controlled by a political committee authorized by any
political candidate for office.

        9.    FFLF  currently  plans  to  run  independent

expenditure advertisements, primarily in the form of television, radio, print, internet and telephone advertisements, in Louisiana's 2014 and/or 2015 local and state elections. These expenditures will not be made in cooperation, consultation, or concert, with, or at the request or suggestion of, any candidates, their authorized political committees, or their agents.

10. As Treasurer, I am responsible for decisions made by FFLF regarding the use of funds for independent expenditures. In fulfilling my duties as Treasurer of FFLF, I will not consult or coordinate with any candidate or campaign regarding FFLF's independent expenditures.

11. FFLF does not, and will not, use any portion of the funds it raises for either direct contributions to or direct expenditures on behalf of any political candidate, campaign, or party, or their agents or authorized political committees.

12. FFLF solicits and receives contributions directly from individuals, corporations and other organizations. FFLF collects and maintains its own accounting records reflecting contributions and expenditures, which are independent of any other organization.

13. FFLF is not, and never has been, an authorized committee of any political candidate, campaign, or party, and does not coordinate the development of its advertisements or otherwise coordinate its spending with any candidate.

14. But for La.R.S. 18:1505.2(K), FFLF would solicit and accept unlimited contributions from individuals. FFLF has identified individuals who it believes are willing to contribute more than $100,000 to FFLF but for La.R.S. 18:1505.2(K).

15. I corresponded with Donald T. Bollinger on February 11, 2014. Mr. Bollinger stated that he would contribute $125,000 to FFLF to make independent expenditures in support of conservative Louisiana candidates if La.R.S. 18:1505.2(K) were enjoined.

16. Based on my experience and discussions with other potential donors, I am confident that, if La.R.S. 18:1505.2(K) were enjoined, FFLF would receive donations in excess of $100,000 from multiple other donors as well.

17. FFLF is refraining from accepting these and other contributions because of the civil and criminal penalties imposed for violations of the Louisiana election laws.

In light of these uncontroverted facts, the "candidate-funding circuit", FFLF argues, is "broken" twice over: the donor (such as Mr. Bollinger) gives money to an independent intermediary (here, FFLF), who then spends the money independently of any candidate. See Arizona Free Enter. Club's Freedom Club PAC v. Bennett, 131 S.Ct. 2806, 2826-27 (2011). The Spies affidavit defines the very essence of the independent expenditure committee.

The defendants ineffectively counter that Spies admitted in an appearance before the Board that FFLF supports David Vitter and that the media has reported that FFLF is a Super PAC set up to support the Senator and his 2015 gubernatorial quest. But the defendants offer no competing evidence in support of their contention that FFLF coordinates with Senator Vitter; nor has there been an effort to discover from FFLF or other sources to advance the inquiry on this central question.[8]

---

[8]The defendants appear to suggest that a political committee cannot be considered independent if it was formed or acts to advance a particular candidate. Defendants' logic is unrealistic. The Second Circuit rejected outright the district court's observation that "so-called independent expenditure-only committees that have only one purpose—advancing a single candidacy at a single point in time—are not truly independent as a matter of law"; "[n]ot so", the Second Circuit observed, reasoning instead that it is the "'absence of prearrangement and coordination' with a candidate [that] are the hallmarks of committee independence." New York Progress and Protection PAC, 733 F.3d at 488 n.3 (citing Citizens United and Buckley). Thus, "[a]n independent committee's choice to advocate on behalf of a single candidate, and its formation after that candidate is nominated, are irrelevant." Id. With respect to the Federal Election Campaign Act, the Supreme Court noted recently:

The record does not disclose any coordination with Senator Vitter or any other specific candidate or campaign. Thus, the record discloses no genuine dispute as to the material fact respecting FFLF's independence and compels the conclusion that injunctive relief is summarily appropriate. Given the overwhelming legal authority supporting FFLF's position and the fact that it has demonstrated that it is indeed an independent Super PAC, FFLF has shown entitlement to judgment as a matter of law and it, therefore, has succeeded on the merits of its First Amendment challenge.[9]  Why injunctive relief?

---

> A PAC is a business, labor, or interest group that raises or spends money in connection with a federal election, in some cases by contributing to candidates.  A so-called "Super PAC" is a PAC that makes only independent expenditures and cannot contribute to candidates.  The base and aggregate limits govern contributions to traditional PACs, but not to independent expenditure PACs.  <u>See SpeechNow.org. v. Fed. Election Comm'n</u>, 599 F.3d 686, 695-96 (D.C. Cir. 2010)(en banc).

<u>McCutcheon v. FEC</u>, 134 S.Ct. 1434, 1442 n.2 (2014).  The Court hastens to note that something with more gravitas than press reports might have been of more assistance to the credibility of defendants' submissions on the matter of independence.  Moreover, whether or not Mr. Spies told the Board he was for Senator Vitter is not fatal to "independence."  Nothing in the statute prohibits the support of only one candidate.

[9]It has been observed in the context of requests for preliminary injunctive relief that, in the face of a First Amendment challenge, "the likelihood of success on the merits is the dominant, if not dispositive factor" driving entitlement to relief.  <u>See New York Progress and Protection PAC</u>, 733 F.3d at 488 (citing <u>Joelner v. Vill. of Wash. Park</u>, 378 F.3d 613, 620 (7th Cir. 2004)).

2. Irreparable Injury Absent Injunction

FFLF contends that, absent injunctive relief, FFLF and its prospective donors face the dilemma of either engaging in political advocacy to the fullest by accepting donations in excess of the contribution limit and thereby risking enforcement proceedings and penalties, or complying with the statutory limit, thus self-censoring and chilling their own speech for fear of enforcement proceedings.  With the continuing threat of penalties, FFLF is denied the ability to solicit and accept funds that it would use for political speech; as such, the defendants are preventing it from engaging in political advocacy during the 2014 and 2015 state and local Louisiana elections.  FFLF has demonstrated that it is suffering irreparable harm for which monetary damages are inadequate.

"Placing limits on contributions which in turn limit expenditures plainly impairs freedom of expression." Citizens Against Rent Control v. City of Berkeley, 454 U.S. 290, 299 (1981). It is well-settled that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Elrod v. Burns, 427 U.S. 347, 373 (1976). FFLF's "ability to speak is undoubtedly limited when it cannot raise money to pay for speech." See Texans for Free Enter., 732 F.3d at 539.  The relief FFLF seeks would fill the gap that exists in the state campaign finance law, which pre-dates Citizens United

and its progeny and does not define, or exclude from the law's reach, independent expenditure-only committees. FFLF has established irreparable injury that cannot be compensated with post-election relief or after-the-fact money damages.

3.   Balance of Hardships

FFLF has demonstrated significant and irreparable injury to its free speech rights, whereas the defendants have failed to point to any credible harm they would suffer as a result of the issuance of an injunction. Indeed, the balance of harms clearly favors the plaintiff, whose speech has been and continues to be reduced by virtue of the threat of enforcement of La.R.S. 18:1505.2(K). The State simply "does not have an interest in the enforcement of an unconstitutional law." ACLU v. Ashcroft, 322 F.3d 240, 247 (3d Cir. 2003); New York Progress and Protection PAC, 733 F.3d at 488 (citation omitted).

4.   The Public Interest

"[I]njunctions protecting First Amendment freedoms are always in the public interest." Texans for Free Enterprise, 732 F.3d at 539 (citing Christian Legal Soc'y v. Walker, 453 F.3d 853, 859 (7th Cir. 2006)). The defendants speculate without facts that the State has an interest in preventing circumvention and corruption. But the overwhelming authority already outlined condemns the defendants' arguments. See id.

FFLF has carried its burden to prove entitlement to a

permanent injunction, as well as entitlement to a declaration that
La.R.S. 18:1505.2(K) is unconstitutional as applied to it, so long
as it engages only in independent expenditures.  The Court hereby
declares that, as applied to FFLF, an independent expenditure-only
committee, the contribution limit contained in La.R.S. 18:1505.2(K)
is  unconstitutional.    Accordingly,  IT  IS  ORDERED:  that  the
plaintiff's request for injunctive relief is GRANTED; Defendants
and  their  officers,  agents,  servants,  employees,  or  assigns  are
hereby permanently enjoined, or until further order of this Court,
from  enforcing  the  contribution  limit  contained  in  La.  R.S.
18:1505.2(K),  as  well  as  any  applicable  rules  and  regulations
regarding that provision, against FFLF and its donors, so long as
FFLF  is  an  independent  expenditure  only  committee.    The  issue  of
costs and fees, if an issue, will be referred to the magistrate
judge for resolution.[10]


                       New Orleans, Louisiana, May 2, 2014



                            _____
                            MARTIN L. C. FELDMAN
                            UNITED STATES DISTRICT JUDGE




_____

          [10]Counsel for plaintiff shall submit a form of injunction
and judgment within five working days.